

**Ruiz Consulting Group**
*Clinical and Forensic Psychology*

17407 Bridge Hill Court, Suite A, Tampa, Florida 33647 Ph. 813-727-0131

## Forensic Mental Health Evaluation

**Name**: Peter Supan
**Date of Birth**: 03-08-1989
**Case: United States v. Peter Supan**
**Evaluator**: Mark A. Ruiz, PhD ABPP
**Date of Report**: 05-11-2025

### Identifying Information, Referral Question, and Notification

Dr. Supan is a 36-year-old Asian American man who was referred for a mental health evaluation by his attorney, Mr. Blair Jackson, Hanlon Law Group, Sarasota, Florida. The evaluation was requested to assess his history of mental illness, risk for sexual offending, and amenability to treatment for mitigation purposes. Dr. Supan has been charged with Coercion and Enticement of a Minor to Engage in Sexual Activity and Production of Child Sex Abuse Material based on allegations that he solicited a 14-year-old female minor for sex on February, 2024.

Dr. Supan was not incarcerated and was interviewed in this writer's North Tampa office. This writer explained to him the purpose and nature of the procedures, including the limits of confidentiality. He was notified that the evaluation was requested by his attorney and that information obtained would be released to individuals involved with the case. He acknowledged this notification and had the opportunity to ask questions. He was provided a consent form to review. Dr. Supan provided written and verbal consent for the evaluation. He also gave permission to speak with his wife.

### Sources of Information Considered

1. Incident Sheets, Manatee County Sheriff's Office (2024012491), including chat logs from the contact.
2. Social work interview with the minor involved in the case.
3. Clinical interviews with Dr. Supan not including notification or testing: 03-26-2025 (approximately 70 minutes), 04-05-2025 (approximately 30 minutes).
4. Collateral phone interview with Dr. Supan's wife: 05-01-2025 (approximately 25 minutes).
5. Psychological testing: Personality Assessment Inventory (PAI), Psychopathy Checklist-Screening Version (PCL-SV), Sexual Violence Risk-20 rating system (SVR-20) with additional items.
6. Search engine results: Florida Department of Law Enforcement (FDLE) and National Sex Offender Public Website (NSOPW) databases.

### Relevant History (reported by defendant unless otherwise specified)

**Social History:** Dr. Supan was born and raised in South Carolina. He was an only child who was raised by both parents. His parents immigrated to the U.S. from Thailand. He recalled a normal childhood with no abuse or neglect. His parents emphasized the

importance of education and always wanted him to be a physician. His mother was particularly influential in his life. His father was a physician and provided a good life for the family. Dr. Supan described the home environment as rigid, sheltered, and unaffectionate at times. He had a good relationship with his parents but acknowledged that they often did not talk about relationship issues (e.g., dating, sex). Dr. Supan did well in high school. He was involved in organized sports and he had an active social life. There was no report of learning or attention problems. He began abusing alcohol and marijuana while in high school. He graduated high school and went on to college at the University of South Carolina. He excelled academically and graduated in 2011. He then went to A.T. Still University of Osteopathic Medicine in Arizona. He did well in school and graduated with his Doctorate of Osteopathy. Since completing his education, he has worked as a physician at healthcare facilities in Florida. Dr. Supan is married and currently lives with his wife. They do not have children.

**Medical History:** Dr. Supan's medical history is significant for obstructive sleep apnea, hypertension, and erectile dysfunction. He uses a continuous positive pressure airway (CPAP) device for the sleep apnea and he takes medications to manage high blood pressure. Otherwise, he is physically healthy and is not aware of active medical problems. He has access to medical care in the community. There was no report of surgeries, hospitalizations, or traumatic injuries which would have relevance for this evaluation.

**Sexual Functioning:** Dr. Supan identified himself as a man who is sexually attracted to females. He is currently married and he has lived with his wife for the approximately 4 years of their marriage. They do not have children. He estimated that he has had fewer than 5 sexual partners in his life. His wife said he had limited experience in committed relationships prior to when they met, and she suspected that this made him gravitate towards online relationships. Dr. Supan acknowledged that he would regularly view pornography and engage in sexually explicit conversations with people online. He spent increasing amounts of time in online sexual behavior. His wife was concerned about the lack of physical intimacy in the marriage and asked him to seek counseling. Dr. Supan has a history of erectile dysfunction which worsened this situation. Dr. Supan said he would often feel ashamed of his online behavior and his inability to perform sexually. However, he continued the online activities despite these difficulties. The behavior eventually led to his arrest. Dr. Supan denied sexual interest in activities involving aggression, personal violation, or pain exchange. He said he has never had sex with a minor. There is no history of prior sex offending. He believes he can control his sexual behavior. His wife has never observed him acting inappropriately around minors.

**Mental Health Functioning:** Dr. Supan has a history of depression and anxiety. He has had periods when he was emotionally down and had low motivation. During these times he had poor sleep and he was often fatigued. He would isolate himself and have decreased interest in events going on around him. He cited work demands as a major life stressor. He often would drink heavily and smoke marijuana to manage these negative emotions. He also would view pornography and have sexually explicit interactions with people online. He experienced periods of intense shame following his online sexual

behaviors. He functioned at work despite these symptoms. There was no report of manic or psychotic episodes. There is no history of interpersonal trauma. Dr. Supan has never had a panic attack. There was no indication that he has problems with irritability or poor anger control. He participated in brief counseling prior to his arrest. He has never had a trial on psychiatric medications. He has never been hospitalized for psychiatric stabilization.

**Alcohol & Drug Use History:** Dr. Supan began abusing alcohol and marijuana while in high school. This use escalated in college and he reported a history of negative consequences related to his use, most notably criminal arrests and a worsening of emotional functioning. He continued to drink and smoke marijuana despite these difficulties. He had periods of heavy drinking (>14 drinks per week) and regular marijuana use when he worked as a physician. He said this use never interfered with work. He denied abuse of other street drugs. There is no history of prescription drug abuse. There is no family history of addiction. He previously participated in drug counseling while in college. He is participating in substance abuse counselling and a peer support/12-step group since the arrest.

**Criminal History:** Dr. Supan was previously arrested for marijuana possession and Driving Under the Influence (DUI) while in college. He participated in counseling and drug testing following the arrest for drug possession. These charges are now resolved. He had involvement in undetected criminal activity as an adult given the drug use. He has never been convicted of a felony. A review of the FDLE/NSOPW websites revealed no prior sex offending.

Current Functioning
Mental Status Exam during the interviews

| | |
|---|---|
| **Orientation/Awareness:** | Alert and aware of name, date, and time/location. |
| **Appearance:** | Dressed in casual attire, good hygiene. |
| **Motor Functioning:** | No obvious problems. |
| **Speech:** | Normal for rate, articulation, and volume. |
| **Thought Processes:** | Organized and goal-directed; no psychosis. |
| **Thought Content:** | Appropriate to situation; no suicidal/violent ideation. |
| **Delusions:** | None evident during questioning. |
| **Hallucinations:** | No signs of responding to internal stimuli. |
| **Memory:** | Normal memory for recent and remote information based on his ability to recall verifiable details. |
| **Attention:** | No obvious impairments. |
| **Emotions-Mood/Affect:** | Dysphoric (negative) / Anxious, sad |
| **Judgment/Insight:** | Fair judgement, good insight. |
| **Attitude towards Examiner:** | Cooperative, respectful. |
| **Immediate Suicide Risk:** | No current thoughts, plans, or intentions for suicide. |
| **Immediate Violence Risk:** | No current thoughts, plans, or intentions for violence. |
| **Estimated Intelligence:** | Above Average based on conversational content and educational achievement. |

## Psychological Testing

Dr. Supan was administered the Personality Assessment Inventory (PAI), an evidence-based measure of response style, personality, mental illness, and other issues of clinical concern. The instrument was administered to identify treatment needs and risk factors for re-offending. He answered all of the items on the questionnaire and there was no evidence of inconsistent or unusual responding. Measures of symptom exaggeration and over-reporting were within normal limits. However, one measure of defensiveness and under-reporting was elevated. This finding suggests that Dr. Supan was attempting to present an overly positive image of himself. The PAI protocol was valid, but the results may underestimate the nature and degree of his problems.

Dr. Supan did not endorse clinically significant mental health problems or personality disorder. There was no indication of emotional instability, poorly controlled behavior, or thought dysfunction. Measures of substance abuse and antisocial features were within normal limits. There was no evidence of suicidal or aggressive tendencies. He described himself as affectionate and balanced in relationships. It is important to note that these results may underestimate the problems he is having.

The Psychopathy-Checklist Screening Version (PCL-SV) was completed based on the information obtained from the clinical interviews and available law enforcement records. The PCL-SV is an evidence-based rating system designed to identify psychopathic personality disorder. Psychopathic personality disorder is a severe condition linked to re-offending. Dr. Supan received a PCL-SV total score of 4 which is well below the cut-off commonly used to identify psychopathy. A personality impairment was seen in the area of impulsivity given the involvement in online sexual behavior. Another impairment was seen in adult rule-breaking behavioral tendencies given the history of marijuana abuse, criminal offending, and the incident at issue here.

## Risk Assessment

**Incident at Issue:** In June 2024 law enforcement received a cyber tip from the National Center for Missing and Exploited Children in reference to inappropriate material being transmitted over the Internet. Further investigation revealed that in February 2024 Dr. Supan likely had inappropriate electronic communications with a 14-year-old female minor in another state. In October 2024, officers made contact with Dr. Supan and executed a search warrant. During the contact he made a number of admissions and incriminating statements. He admitted to engaging in an online chat with a 14-year-old female minor. He asked for nude photos of the minor and also talked to her in a sexually explicit way. Officers reviewed portions of the chat he had with the minor. The minor was interviewed by a social worker as part of this investigation. She acknowledged that she was texting with a number of individuals without the awareness of her parents. Dr. Supan was taken into custody by law enforcement after the investigation was completed.

The Sexual Violence Risk-20 (SVR-20) rating system was completed based on information obtained from the clinical interviews, available law enforcement records, and the previously reviewed psychological testing. The SVR-20 is an evidence-based rating

system designed to identify risk factors for sexual re-offending. The instrument was initially developed for violent offenders, but provides a useful framework in other evaluations.

The primary factor that increases Dr. Supan's risk for re-offending is compulsive online sexual behavior and intimacy deficits that promoted this behavior. Additional risk factors include the criminal history and substance (marijuana/alcohol) abuse. Personality testing identified impairments in the areas of impulsivity, rule-breaking tendencies, and defensiveness which adds to risk. The history of depression and anxiety will increase risk if left untreated. The minor involved in this incident was previously unknown (i.e., stranger) to Dr. Supan.

Dr. Supan has a supportive family and he was not sexually abused as a child. He has a history of exceptional educational and occupational achievements. He is married and has lived with his wife for the duration of the marriage. There is no history of severe mental illness or suicidal tendencies. The offending at issue here did not involve hands-on contact. There was no evidence of the use of threats or coercion. There was no involvement of a male victim or male pornographic content. Dr. Supan recognized the seriousness of the matter and he did not minimize his behavior. He did not express attitudes that condone offending against minors. He made a spontaneous expression of remorse and he has entered counseling to address his behavior. He has stopped abusing substances since entering treatment.

A risk assessment based on the SVR-20 factors was made using the following categories: Minimal, Low, Moderate, or High. It is the opinion of this writer that Dr. Supan can be a Low risk for re-offending provided that safeguards are put in place to address the risk factors identified here.

DSM-5/ICD-11 Diagnostic Impressions
Inclusion of a diagnosis in this report does not imply that the condition(s) meets legal or other non-medical criteria. There may be other diagnoses that are not offered because they are not considered relevant to the issues that are of focus here.
**DSM-5 Diagnosis:** 1) **Adjustment disorder with anxiety and depression**
2) **Compulsive Sexual Behavior Disorder (online sexual behavior)**

Summary, Opinions, and Recommendations
Dr. Supan was referred for a mental health evaluation by his attorney. The evaluation was requested to assess his history of mental illness, risk for sexual offending, and amenability to treatment for mitigation purposes. It is the opinion of this writer that Dr. Supan suffers from two forms of mental illness. First, he suffers from a Compulsive Sexual Behavior Disorder characterized by a pattern of compulsive sexual behavior that caused harm and continued despite such harm. He became increasingly involved in online sexual behaviors to the point to where it led to his arrest. Second, he suffers from an adjustment disorder characterized by anxiety and depression in response to the legal

Case: Peter Supan
Report Date: 05-11-2025                                5 of 6

proceedings. Despite the presence of these conditions, he has a history of academic achievement and gainful employment in the community.

The SVR-20 rating system suggested that Dr. Supan can be a low risk for sexual re-offending provided that safeguards are put in place to address the risk factors identified here. The most notable historical risk factors include the nature of the current incident and the criminal history. Present-day factors that may change with treatment include impulsivity, rule-breaking tendencies, and defensiveness. The pattern of compulsive sexual behavior is an additional risk factor that must be addressed in treatment. It is important to note that Dr. Supan does not have a psychopathic personality disorder.

It is the opinion of this writer that Dr. Supan requires and is amenable to the following treatment plan:
1. Dr. Supan should continue mental health treatment which is focused on understanding and correcting the motivating factors for the current behavior. It is noteworthy that he entered treatment on his own accord. He may benefit from an evaluation for psychiatric medications that can assist treatment.
2. Dr. Supan should abstain from alcohol and illegal drug use. He should continue the substance abuse counseling he is involved with.
3. Dr. Supan should have no access to the Internet. His providers may develop a safety plan so he can use the Internet for specified purposes. Accountability software should be installed on any device he uses.
4. Dr. Supan should have no access to unrelated minors as a precautionary measure.

The opinions offered here are made with a reasonable degree of professional certainty and in recognition that the final determinations for this case will be based on legal decisions. These opinions are based solely on the information available for review and are limited by the reliability of the sources of information considered. Please contact this writer with questions or concerns.

Respectfully submitted,

*[signature]*

Mark A. Ruiz, PhD ABPP
Licensed Psychologist PY7623
Board Certified in Forensic Psychology
American Board of Professional Psychology
For Ruiz Consulting Group, PLLC

# EAGLE'S WINGS
## COUNSELING CENTER

5763 Rosin Way
Sarasota, FL 34233
(941) 356-2061

eagleswingscc@icloud.com

www.eagleswingscounseling.com

January 8, 2026

Your Honor,

I am writing in my capacity as a Licensed Mental Health Counselor regarding my client, Mr. Pete Supan, who has been engaged in outpatient psychotherapy under my care since June 30, 2025. This letter is submitted with the client's consent and signed permission for the limited purpose of informing the Court of his participation and engagement in treatment.

Mr. Supan has attended therapy sessions consistently and punctually, participating in treatment on a regular basis. I have been involved in 25 sessions total with this client to this date. Throughout the course of therapy, Mr. Supan has demonstrated a willingness to engage in the therapeutic process, a consistency in punctually attending appointments, an engagement and curiosity into his condition, and an ability to have insight translate into change. He has addressed difficult topics relevant to his personal recovery, marital recovery, legal situation and personal history.

In treatment, Mr. Supan has been working on increasing insight into his behaviors, identifying contributing factors, developing accountability, consistency is sexual sobriety, and learning strategies to reduce risk and improve emotional regulation. He has been receptive to feedback, has completed therapeutic assignments as recommended, and has shown measurable progress in his ability to reflect on his actions and their impact.

While I do not offer opinions regarding legal matters, guilt, or sentencing, I can state that Mr. Supan has taken his treatment seriously and has demonstrated a commitment to ongoing therapeutic work. Continued treatment is clinically indicated to support his progress, encourage accountability, maintain sobriety, and reduce the likelihood of future harmful behavior.

Please note that this letter is intended solely to summarize treatment participation and clinical observations and should not be interpreted as an endorsement of any specific legal outcome. I remain mindful of the seriousness of the charges involved and the importance of public safety.

Thank you for your time and consideration. Should the Court require more clarification regarding treatment participation, I am available within the limits of confidentiality and professional ethics.

Respectfully submitted,

Jenny Upton, MA, LMHC, QS, CSAT
MH9525
Director, Eagle's Wings Counseling Center

January 3rd, 2025

Dear Honorable Judge Jung,

My name is Vranuch Supan and I am Pete Supan's mother. I am writing to you today with a very heavy heart as you prepare to make your decision. Please forgive me if my words are simple. I am speaking from my heart as a mother who is deeply worried for my son. I am grateful for the opportunity to share my thoughts and feelings with you. I hope you can understand the love and concern behind my words.

First, I want to express how deeply sorry we are for what happened. I am truly sorry to the daughter and her family who were hurt by Pete's actions. I know nothing I say can take away their pain. From the bottom of my heart, I apologize to them. I pray every day for their healing, peace, and strength. We are very sorry for the pain and suffering caused by Pete's actions. As a mother, I am heartbroken by the pain Pete has caused the family and I am truly sorry.

As a mother, I want to share who Pete is as a person. Before he had challenges, he truly was a good man. He is a kind and loving son who has always been loving and respectful to our family. He was a role model growing up in his hometown. He graduated top in high school class and Magna cum Laude in college. Pete followed in his father's footsteps and worked very hard to become a medical doctor. He volunteered in medical missions with his dad. The last few years have been very difficult for our family. I had breast cancer, and his father has suffered from severe dementia. Through all of this, Pete has quietly done his best to support and care for us the best he could. He and his wife, Jaylin would drive from Florida to speak with doctors and help care for me during my chemotherapy and my double mastectomy. I appreciated this so much during these difficult times.

As a doctor, Pete has done his best to help many people heal and get better and, at times, even save lives. He has spent his life caring for others and has made a difference in the lives of many patients and their families. He chose a life of service and has always worked hard to do good. I know this does not excuse his mistake, but I hope it shows the kind of person he truly is and the good he has tried to do in his life.

Pete feels deep remorse for his actions. He is ashamed, heartbroken, and truly sorry. He understands the seriousness of what he did and accepts responsibility. This experience has deeply changed him. He wants to learn from this mistake, has received a lot of therapy this past year through rehabilitation. I know he wants to become a better man. His wife Jaylin and our family have supported him this entire year. He wants to grow, heal, and continue to serve others in a positive and meaningful way.

With all my heart, I ask you to please show mercy for Pete. He is my only child. I ask for your understanding and kindness. I hope he can continue his therapy, his rehabilitation, keep helping others, and try to make up for his bad mistake. I pray that he can stay close to us so we can visit him often.

Your Honor, I do not fully understand all the authority you may have, but I respectfully ask, if it is within your power that you consider reducing his sentencing and making a recommendation to the prison board for a low security prison. It is important for you to know that my son is not a violent person and has no prior criminal history. While I fully acknowledge that his actions were wrong and unlawful, his offense was not physical or violent in nature, but rather digital. Placing him among hardened or violent criminals would not be just, nor would it support his rehabilitation. He doesn't need to be placed behind high walls with dangerous men, before he is ready to rejoin society.

Throughout his life, the only work he has done has been to do good and help others in his role as a medical doctor. With the deepest respect, I humbly beg that you consider, if it is within your power, a recommendation for placement in a low-security facility with other non-violent people. I am sure that the years in a minimum facility for quiet reflection and counseling will redeem him for society. Any consideration you are able to give would mean more than words can express to our family and we would appreciate it so much. We truly believe that my son still has the capacity to do good and to serve others again in the future.

Thank you, Honorable Judge Jung, for taking the time to read my letter and for listening to my plea. Again, I am so sorry for my son's action and all the pain it has caused so many people. I place my trust in your wisdom, fairness, and mercy. Thank you again for reading my letter.

With sincere respect and gratitude,
Vranuch Supan
Pete's Mother
843-812-1788

Dr. Donald M Davis
Retired pastor and private school administrator.
850 Tiffany Place, Rockledge Fl 32955.

To the Honorable William Jung

Your Honor,

I am writing to provide a character reference for Pete Supan, whom I have known for nearly ten years. Pete married my daughter, Jaylin, in 2020 after several years in a committed and wholesome relationship. You get hundreds or letters a year offering flattering words and often repeated platitudes. But if you'll permit me, I'd like to express my thoughts through my life's experience and interactions with Pete.

Jaylin's first marriage ended abruptly due to physical and sexual abuse. I urged her to leave that dangerous situation, and afterward it was understandably difficult for her to trust any man. Her relationship with Pete, however, has been entirely different. Throughout the time I have known him, he has treated Jaylin with respect, gentleness, and care. He is mild mannered, soft spoken, and kind to all who know him—qualities I have deeply appreciated as her father.

At his work, Pete was known for the extra time and effort he provided to his patients. The medical profession can be a highly stressful and health care companies push providers to see more patients in less time. Pete always took his time making sure those under his care felt heard and truly cared for. He went above and beyond. He has spent time volunteering to help those who could not afford medical care.

For more than twenty years, I served as a Baptist preacher and school administrator, counseling families through extremely challenging circumstances, including murder, sexual assault, armed robbery, and other serious offenses. I have seen the depths of depravity of the human condition, but I have also witnessed remarkable restoration—individuals overcoming addictions, abusive tendencies, gambling problems, and other destructive behaviors to once again become productive members of society. I have come to realize it is the struggle to overcome these things which builds true and lasting character.

I believe my life experience has taught me to recognize the difference between those who simply go through the motions to get past a situation and those who genuinely repent and then put in the work to change their heart and actions. I'm sure your years of experience in your profession have shown you the same. I believe Pete is one of those who are working hard to overcome the personal flaws all of us possess. For years I preached that the character of a man can be measured by what he does when no one is looking; but experience has taught me that it is also measured by the effort exerted to overcome one's failures and not return to the destructive behavior of the past. Pete has expressed remorse for his behavior, sought professional help, and more importantly, done the difficult work of self-examination to revive his character and safeguard against repeating it. I admire the courage it takes to confront one's shortcomings and commit to meaningful change.

I am fully aware of the seriousness of the matter before the Court, and I do not excuse Pete's behavior. Like all of us, Pete is not without flaws. I supported Jaylin's decision to remain with him during this difficult period because I know he does not exhibit a pattern of immoral or harmful behavior. What occurred was, in my view, a moment of weakness—wholly inconsistent with the man I have come to know. He has accepted responsibility suffered significant losses due to his own behavior and seeks to redeem himself.

Based on my long-term personal knowledge of Pete, I am convinced he has genuinely repented and and that this incident does not reflect a pattern of behavior. I know that given the chance, Pete will continue his journey toward to rebuilding his life with integrity. If given the chance, Pete could use his talents and abilities to help those less fortunate and once again become an upstanding, contributing member of society rather than a financial burden to our overstressed system.

Thank you for your time and consideration.

Dr. Donald M Davis

Michael D. Routzong
2417 Bendemeer Drive
Columbia, SC

Honorable William Jung
District Judge
United States District Court
Middle District of Florida

Re: Pete Supan

Dear Judge Jung:

Thank you for reading this letter. I am married to Pete's Aunt (his mother's sister). I have known him since the day after he was born. My wife and I are childless. Pete and his cousins are very much like our children. They are as close to being our children as my wife and I will ever have. We are very surprised that he has placed himself and his wife, her family and his mother and father and all his family in this shocking, sad place. Indeed, we have a share in this sadness more deeply than I can adequately express.

Judge Jung, I am an attorney. I have been employed as a public defender my entire career. I have spent many hours representing clients as they pleaded guilty. I have listened to other attorneys represent defendants. Frequently, a defendant's family member will speak up on the defendant's behalf. They will often say something like this: "he is a good boy." Frankly, that has always been a paradoxical assertion to me (since the Defendant is pleading guilty to murder or voluntary manslaughter, armed robbery, trafficking drugs, etc.). I cannot say I was perplexed by a family member's effort to offer mitigation by saying that "he is a good boy." That assertion did not seem to correspond to the reality of the crime that the defendant was pleading guilty to.

Now I understand. My nephew is a good boy, and a good man. He was good son to his parents. Pete is my wife's beloved nephew and he has always been a good boy and man to us. I was there the day after he was born. He looked so tiny and purple. I made up my mind that I was going to make sure he was tough (since I was convinced, he was going to be "picked on" by his future classmates). I made sure from his earliest years that he would be outside, (when he was with me), and that I would wrestle with him and prepare him for the danger ahead. As it turned out I need not have worried since he turned out to be a popular student in school and a good athlete.

Pete, his father, my wife and I spent the fall years going to football games in Columbia, SC. When he was young, he rode on my shoulders to the stadium. When he was a little older, he would run ahead and catch passes. Pete and I would always watch the games together in the upper deck.

My recollection is that at a very early age he knew he wanted to be a physician. He accomplished that. I do not know how many patients he has helped. I do not know how many lives he helped save. I know whatever the number is, it is good and honorable. Now he has admitted guilt and accepted responsibility for breaking the law. Now the devastating paradox is

the good man and physician that we know is the same man that perpetrated this ugly deed. Now I understand the paradox since we are living it.

In closing, out of need and out of habit I feel that it is important to give my humble opinion on what is just in this situation. I have attempted to communicate to the Court that he clearly committed a crime, but has done good in his life. I ask the Court to please consider that.

I have discussed the nature and substance of the concept of justice with our judges in South Carolina. I have argued that justice requires that similar situations and circumstances ought to be treated equally and dissimilar defendants ought to be treated differently. In other words, every person should be given their due based on the totality of the circumstances. Here, your Honor, it must be said that you have before you a man that has probably been permanently barred from being a physician, he will be a registered sex offender, and worst of all, he will always know that he has devastated his wife and family. Any one of these consequences is shattering.

Finally, please consider Mr. Jackson's recommendations and mitigation. Please consider the totality of the circumstances. Please consider the loss that Pete has suffered. Please consider his lack of a criminal record. Most importantly, please consider the good that he has done in his life and the supportive family that he has. I ask your honor to place all these facts and circumstances on the scale when you consider what is "sufficient but not greater than necessary" in your sentence.

Sincerely,

Michael D. Routzong

3 January 2026

Dear Honorable Judge William Jung,

My name is Robert Moonan. I write this letter in support of mitigating the sentence for Pete Supan. He is my first cousin through marriage. I have known Pete for twenty-two years. In years that I have known Pete, he has shown himself to be a very thoughtful and caring person. I remember how he has interacted with his parents. He always made sure to help his parents with anything that they asked him to do. Pete is a very driven person. He excelled in the classroom leading him to become a successful medical doctor.

I know that the crime that Pete has committed is severe. I want the court to know that Pete recognizes that he has committed a grievous crime. He has voluntarily been seeking therapy to help him overcome sex addiction. Since November 2024, Pete has been meeting weekly with a certified sex addiction therapist. He has also completed an intensive outpatient rehab for sex addiction and recovery. In addition, Pete been going weekly to a Buddhist meditation center. Pete has also going to weekly court-appointed substance abuse counseling. My wife, Aunyika, and I see Pete and his wife, Jaylin, at least two times a year. Pete has a strong relationship with my wife and his two other first cousins, Aunchana and Tanya and their husbands, Corey and Shaun. I am hopeful that the court will see that Pete has recognized his crime and will see that Pete has voluntarily sought treatment to help him overcome his sex addiction and his substance abuse. I am hopeful that the court will use Pete's sincere actions of facing his sex addiction and substance abuse as mitigating factors to reduce his sentence and to place him in a lower security facility. I am also hopeful that his strong relationship with his wife, Jaylin, and his strong familial relationship with his first cousins (Aunyika, Aunchana and Tanya) will sway the court to

sentence Pete to a facility that is near his wife in Bradenton, Florida and near his first cousins, his parents and his aunt and uncle, who all reside in South Carolina.

Sincerely,

Robert Moonan

*[signature]*

Robert Moonan
113 Pebble Creek Road
Columbia, SC 29223
scurah@hotmail.com
(803) 467-2503